IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| Jeffrey S., | No. 23-cv-4030-CJW |
| Plaintiff, | **REPORT AND RECOMMENDATION** |
| vs. | |
| MARTIN O'MALLEY, COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

_____

Jeffrey S. ("Claimant") seeks judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") in denying his applications for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. Sections 401-34 and for Supplemental Security Income benefits ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. Sections 1381-85. For the reasons that follow, I recommend that the Commissioner's decision be **affirmed**.

## I. BACKGROUND

Claimant was born in 1987. (AR[1] at 91.) He has earned a GED in 2012. (*Id*. at 410.) Claimant allegedly became disabled due to right hand, right shoulder, right knee, and right foot problems, bipolar depression, lower back pain, allergies, anxiety, and ADHD. (*Id*. at 409.) Claimant's alleged onset of disability date is May 8, 2016. (*Id*. at 19.) On November 20, 2018, Claimant filed his applications for DIB and SSI. (*Id*. at

---

[1] "AR" cites refer to pages in the Administrative Record.

1

91-92). His claims were denied originally on August 28, 2019 (*id*. at 91-122) and were denied on reconsideration on January 27, 2020. (*Id*. at 123-58.) A telephonic hearing was held on April 6, 2022, with Claimant and his attorney James Greeman and Administrative Law Judge ("ALJ") David G. Buell and Vocational Expert ("VE") Steven Schill.[2] (*Id*. at 19, 44-90.) Claimant and the VE both testified. (*Id*. at 49-88.) The ALJ issued an unfavorable decision on May 24, 2022. (*Id*. at 11-23.)

Claimant requested review and the Appeals Council denied review on March 2, 2023. (*Id*. at 7-9.) Accordingly, the ALJ's decision stands as the final administrative ruling in the matter and became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

On May 5, 2023, Claimant timely filed his Complaint in this Court. (Doc. 4.) On November 9, 2023, all briefing was completed, and the Honorable C.J. Williams, Chief United States District Court Judge, referred the case to me for a Report and Recommendation.

## II. DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant has a disability when, due to physical or mental impairments, the claimant:

> is not only unable to do [the claimant's] previous work but cannot, considering [the claimant's] age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country.

---

[2] Claimant consented to appear via telephone for the administrative hearing and waived his right to appear in person or via video. (AR at 47.)

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A). A claimant is not disabled if the claimant is able to do work that exists in the national economy but is unemployed due to an inability to find work, lack of options in the local area, technological changes in a particular industry, economic downturns, employer hiring practices, or other factors. 20 C.F.R. §§ 404.1566(c), 416.966(c).

To determine whether a claimant has a disability, the Commissioner follows a five-step sequential evaluation process. *Swink v. Saul*, 931 F.3d 765, 769 (8th Cir. 2019). At steps one through four, the claimant has the burden to prove he or she is disabled; at step five, the burden shifts to the Commissioner to prove there are jobs available in the national economy. *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (quotation omitted).

At step one, the ALJ will consider whether a claimant is engaged in "substantial gainful activity." *Id.* If so, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). "Substantial activity is significant physical or mental work that is done on a full- or part-time basis. Gainful activity is simply work that is done for compensation." *Dukes v. Barnhart*, 436 F.3d 923, 927 (8th Cir. 2006) (citing *Comstock v. Chater*, 91 F.3d 1143, 1145 (8th Cir. 1996); 20 C.F.R. §§ 404.1572(a)-(b), 416.972(a)-(b)).

If the claimant is not engaged in substantial gainful activity, at step two, the ALJ decides if the claimant's impairments are severe. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the impairments are not severe, then the claimant is not disabled. *Id.* An impairment is not severe if it does not significantly limit a claimant's "physical or mental ability to do basic work activities." *Id.* §§ 404.1520(c), 416.920(c). The ability to do basic work activities means the ability and aptitude necessary to perform

3

most jobs. *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); *see also* 20 C.F.R. §§ 404.1521(b), 416.921(b). These include:

> (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.

*Id.* (quotation omitted) (numbers added; internal brackets omitted).

If the claimant has a severe impairment, at step three, the ALJ will determine the medical severity of the impairment. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment meets or equals one of the impairments listed in the regulations ("the listings"), then "the claimant is presumptively disabled without regard to age, education, and work experience." *Tate v. Apfel*, 167 F.3d 1191, 1196 (8th Cir. 1999) (quotation omitted).

If the claimant's impairment is severe, but it does not meet or equal an impairment in the listings, at step four, the ALJ will assess the claimant's residual functional capacity ("RFC") and the demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's RFC is the most that the individual can do despite the combined effect of all his or her credible limitations. *Id.* §§ 404.1545(a), 416.945(a); *Toland v. Colvin*, 761 F.3d 931, 935 (8th Cir. 2014). A claimant's RFC is based on all relevant evidence and the claimant is responsible for providing the evidence the Commissioner will use to determine his or her RFC. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). "Past relevant work" is any work a claimant performed within the fifteen years prior to his or her application for disability benefits that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). If a

claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id*. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

At step five, if the claimant's RFC will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show that there is other work the claimant can do, given the claimant's RFC, age, education, and work experience. *Id*. §§ 404.1520(a)(4)(v), 404.1560(c)(2), 416.920(a)(4)(v), 416.960(c)(2). The ALJ must show not only that the claimant's RFC will allow the claimant to do other work, but also that other work exists in significant numbers in the national economy. *Eichelberger*, 390 F.3d at 591 (citation omitted).

### A.  *The ALJ's Findings*

The ALJ made the following findings regarding Claimant's disability status at each step of the five-step process. Initially, the ALJ determined that Claimant meets the insured status requirements through September 30, 2021. (AR at 21.) The ALJ then applied the first step of the analysis and determined that Claimant had not engaged in substantial gainful activity from her alleged disability onset date of May 8, 2016. (*Id*.) At the second step, the ALJ concluded from the medical evidence that Claimant suffered from the following severe impairments: degenerative changes in his lumbar spine, residuals of bilateral finger injuries, obesity, bipolar disorder, ADHD, and anxiety disorder. (*Id*. at 22.) The ALJ also considered the effects of Claimant's substance abuse disorder but found this impairment non-severe because "the evidence does not establish that it imposed more than a minimal limitation on his ability to perform basic work activities for twelve consecutive months since the alleged onset date." (*Id*.) Further, the ALJ considered Claimant's knee and foot pain and PTSD and adjustment disorder but determined that none of these were medically determinable impairments. (*Id*.) At the third step, the ALJ found that Claimant did not have an impairment or combination of

5

impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (*Id.* at 23.) At the fourth step, the ALJ determined that Claimant had the following RFC:

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR [§] 404.1567(b) and 416.967(b) with the following limitations: he has the ability to stoop, kneel, crouch, and crawl occasionally. The claimant is able to handle and finger frequently. He is able to learn, understand, remember, and persist at a consistent pace while performing tasks that are simple, straightforward, and uncomplicated. The claimant is able to exercise proper judgment in performing those tasks and to respond appropriately to routine changes in the workplace. He is able to respond and behave appropriately without being distracted or distracting others when performing tasks that do not require more than incidental and superficial interaction with co-workers or the public.

(*Id.* at 25.) Also at the fourth step, the ALJ determined that Claimant is unable to perform any past relevant work. (*Id.* at 31.) At step five, the ALJ found that there were jobs that existed in significant numbers in the national economy Claimant could perform, including photocopy machine operator, sorter, and housekeeper. (*Id.* at 32.) Thus, the ALJ concluded that Claimant was not disabled. (*Id.* at 33.)

### B. *The Substantial Evidence Standard*

The ALJ's decision must be affirmed "if it is supported by substantial evidence in the record as a whole." *Grindley v. Kijakazi*, 9 F.4th 622, 627 (8th Cir. 2021) (quoting *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996)). "The phrase 'substantial evidence' is a 'term of art' used throughout administrative law. . . . [T]he threshold for such evidentiary sufficiency is not high. . . . It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations and quotations omitted); *see also Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021) ("Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a conclusion.") (Quoting *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012)).

6

Thus, a court cannot disturb an ALJ's decision unless it falls outside this available "zone of choice" within which the ALJ can decide the case. *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006) (citation omitted). "An ALJ's decision is 'not outside the zone of choice' simply because [the c]ourt 'might have reached a different conclusion had [it] been the initial finder of fact.'" *Kraus*, 988 F.3d at 1024 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)).

In determining whether the Commissioner's decision meets this standard, the court considers all the evidence in the record, but does not reweigh the evidence. *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). A court considers "both evidence that detracts from the Commissioner's decision, as well as evidence that supports it." *Fentress v. Berryhill*, 854 F.3d 1016, 1020 (8th Cir. 2017). The court must "search the record for evidence contradicting the [ALJ's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)). However, "even if inconsistent conclusions may be drawn from the evidence, the [Commissioner's] decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *see also Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016) (providing that a court "may not reverse simply because [it] would have reached a different conclusion than the [Commissioner] or because substantial evidence supports a contrary conclusion").

### III. DISCUSSION

#### A. *Parties' Arguments*

Claimant argues that the Commissioner committed reversible error "by failing to incorporate all the limitations from the prior administrative medical findings of Myrna Tashner, Ed.D, and Tiffany Iskander, Ph.D., in the residual functional capacity." (Doc.

7

13 at 9.) Claimant notes that, at the initial agency determination, state agency psychological consultant Myrna Tashner, opined that Claimant "would have moderate limitations in interacting with others and concentrating, persisting, or maintaining pace." (*Id.* at 11.) Claimant also notes that on reconsideration of the initial determination, Dr. Iskander affirmed Dr. Tashner's findings. (*Id.* at 12.) Further, the Claimant points out that the ALJ found Dr. Tashner's and Dr. Iskander's opinions persuasive, but did not include any limitations in concentration, persistence, or pace in his RFC assessment for Claimant. (*Id.* at 12-13.) Claimant maintains that the "ALJ's failure to account for moderate limitations in concentration, persistence, and pace in the RFC, or explain why such limitations were omitted, is not harmless." (*Id.* at 14.) Claimant asserts that "[d]eficits in the ability to perform at a consistent pace translate into an RFC limitation of time off-task, given the inability to complete a normal workday and the need for additional breaks." (*Id.* at at 14-15.) Claimant points out that the Vocational Expert "testified that generally, an individual who was off task more than 10% of the workday would be unable to maintain competitive employment." (*Id.* at 15.) Claimant contends that based on the Vocational Expert's testimony, "moderate limitations in the ability to complete a normal workday and the need for unscheduled breaks could have eliminated all work." (*Id.*) Claimant concludes that, "[g]iven the substantial support in the record for absenteeism, time on task and needing additional breaks, the ALJ's omission of these limitations from the RFC without any explanations as to why these work preclusive limitations were omitted requires a remand." (*Id.* at 16.)

The Commissioner argues that substantial evidence supports the mental RFC assessment of Claimant. (Doc. 15 at 7.) The Commissioner maintains that the "ALJ's thorough discussion of the evidence pertaining to [Claimant's] alleged mental impairments throughout the decision provided far more than a mere scintilla of evidence to support the RFC." (*Id.* at 8-9) (citing *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154

(2019); *Jones v. Astrue*, 619 F.3d 963, 970 (8th Cir. 2010); *Owen v. Astrue*, 551 F.3d 792, 801 (8th Cir. 2008)). The Commissioner contends that Claimant's argument that "the ALJ erred in finding persuasive the prior administrative medical findings of the state agency psychological consultants, but failing to adopt all of the limitations assessed therein in the RFC" is without merit because the "ALJ appropriately considered all of the evidence of record . . . and crafted an RFC that included specific limitations accounting for [Claimant's] mental impairments." (*Id.* at 9.) The Commissioner notes that "in formulating the RFC, the ALJ was not required to adopt verbatim every limitation expressed by the state agency psychological consultants in the RFC." (*Id.*) (citing *Austin v. Kijakazi*, 52 F.4th 723, 729 (8th Cir. 2022)). The Commissioner maintains that Claimant "has failed to point to any evidence from the record that he had greater mental limitations than accounted for in the RFC." (*Id.* at 10.) The Commissioner concludes that "the record as a whole contains substantial evidence to support the RFC assessment; and, therefore, this Court should affirm the determination that [Claimant] was not disabled." (*Id.* at 12.)

### B.     Relevant Law

An individual's RFC "is defined as 'what [the claimant] can still do' despite his or her 'physical or mental limitations.'" *Gann v. Berryhill*, 864 F.3d 947, 951 (8th Cir. 2017) (alteration in original) (quoting *Lauer v. Apfel*, 245 F.3d 700, 703 (8th Cir. 2001)). An ALJ determines a claimant's RFC "based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations." *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013) (alteration in original) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). While an ALJ must consider all of the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey v. Astrue*, 503 F.3d 687, 697 (8th

9

Cir. 2007). However, "there is no requirement that an RFC finding be supported by a specific medical opinion" because "[e]ven though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." *Schmitt v. Kijakazi*, 27 F.4th 1353, 1360 (8th Cir. 2022) (quoting *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) and *Cox v. Astrue*, 495 F.3d 614, 619-20 (8th Cir. 2007)).

An ALJ also has a duty to develop the record fully and fairly. *Cox*, 495 F.3d at 618. "There is no bright line rule indicating when the [ALJ] has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008). The ALJ bears this responsibility "independent of the claimant's burden to press [her] case" and it extends to cases where claimants are represented by counsel at the administrative hearing. *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004). However, the Eighth Circuit has held that:

> Ultimately, the claimant bears the burden of proving disability and providing medical evidence as to the existence and severity of an impairment. *Snead,* 360 F.3d at 836; 20 C.F.R. § 404.1512. Past this point, "an ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." *Naber v. Shalala,* 22 F.3d 186, 189 (8th Cir. 1994).

*Kamann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013). The inquiry is whether the claimant "was prejudiced or treated unfairly by how the ALJ did or did not develop the record." *Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993). Absent unfairness or prejudice, remand is not required. *Id.* (citing *Phelan v. Bowen*, 846 F.2d 478, 481 (8th Cir. 1988)).

An ALJ is only required to include in the hypothetical the impairments the ALJ found supported by the record. *Goff v. Barnhart*, 421 F.3d 785, 794 (8th Cir. 2005) ("A hypothetical question posed to the vocational expert is sufficient if it sets forth

10

impairments supported by substantial evidence in the record and accepted as true.") (Quotation omitted). "The hypothetical question must capture the concrete consequences of the claimant's deficiencies." *Hunt v. Massanari,* 250 F.3d 622, 625 (8th Cir. 2001).

## C.   *Pertinent Medical Evidence*

On July 15, 2019, Dr. Myrna Tashner, Ed.D., reviewed Claimant's medical records and provided a "Mental Residual Functional Capacity Assessment" for Claimant. Under the "paragraph B" criteria of the Listings, Dr. Tashner determined that Claimant had moderate limitations in interacting with others and concentrating, persisting, or maintaining pace. (AR at 101-102, 116.) Dr. Tashner also determined that Claimant was moderately limited in the ability to: maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, and get along with co-workers or peers without distracting them or exhibiting behavioral extremes. (*Id.* at 104-105, 118-119.) In explaining her findings, Dr. Tashner noted that on a recent mental status exam (May 2019) Claimant was "intact for appropriate grooming, memory and concentration activities," his mood was "annoyed and affect fair," and his anxiety was "rather constant." (*Id.* at 105, 119.) Dr. Tashner also noted that Claimant's activities of daily living demonstrated "[d]ifficulties getting along and concentrating" but he can "follow instructions, get along w[ith] authority and manage stress and change." (*Id.*) Further Dr. Tashner noted that Claimant was capable of understanding instructions and could communicate with family and friends without difficulty. (*Id.*)

On January 27, 2020, Dr. Tiffany Iskander, Ph.D., reviewed Dr. Tashner's findings and considered new medical evidence provided by Claimant for reconsideration

11

of the initial Mental Residual Functional Capacity Assessment. Dr. Iskander determined that:

> The initial decision limited the [Claimant] with moderate restrictions, based on additional information in the file, it determined that [Claimant] would still be moderately restricted[3] and capable of performing unskilled work. The initial decision remains consistent and persuasive.

(*Id.* at 139-40, 155-56.)

## D. Analysis

At the third step of the five-step sequential process, the ALJ thoroughly considered the "paragraph B" criteria, where Dr. Tashner determined that Claimant had moderate limitations in interacting with others and concentrating, persisting, or maintaining pace. Discussion of the "paragraph B" criteria is not the same as Dr. Tashner's mental RFC assessment nor the ALJ's RFC assessment. Indeed, the mental RFC performed by Dr. Tashner states that "the actual mental residual functional capacity assessment is recorded in the narrative discussion(s), which describes how the evidence supports each conclusion." (AR at 104, 118.) Similarly in his decision, after addressing the "paragraph B" criteria at step three, the ALJ stated:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. Rather, the mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The

---

[3] On reconsideration, Claimant's moderate limitations remained the same with Claimant being moderately limited in the ability to: maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, and get along with co-workers or peers without distracting them or exhibiting behavioral extremes. (AR at 138-39, 154-55.) The limitations under the "paragraph B" criteria also remained the same with moderate limitations in interacting with others and concentrating, persisting, or maintaining pace. (AR at 135-36, 151-52.)

following residual functional capacity assessment reflects the degree of limitation found in the "paragraph B" mental functional analysis.

(*Id.* at 25.)

The ALJ thoroughly addressed the "paragraph B" criteria at step three:

To satisfy the "paragraph B" criteria, the mental impairments must result in at least one extreme or two marked limitations in a broad area of functioning, which are: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves. A marked limitation means functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited. An extreme limitation is the inability to function independently, appropriately or effectively, and on a sustained basis.
The record supports the following findings as to the claimant's limitation in the four "paragraph B" criteria: . . .

      2) In interacting with others, the claimant has a moderate limitation. He testified to angering easily, leading to interpersonal conflict that ended jobs and friendships. The claimant presented as angry or anxious at times, which reasonably correlates with some limitation in his interactions with others when such signs manifest (4F, 6F, and 10F). On other occasions, however, the claimant was cooperative and pleasant (4F, 6F, 10F-11F, and 13F/145). He reported being able to handle his anger (3F). The claimant was able to interact appropriately in a group therapy setting (18F/26). He identified having family and friends as support (5E and 18F/39). On balance, the record supports a finding that the claimant is more than slightly, but less than seriously, limited in his interactions with others.

      3) With regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation. When the claimant was slightly hyperactive or hypomanic on examination, it was difficult for him to sit still (4F and 18F/10). His associations were tangential and the claimant exhibited impaired attention and concentration (4F and 13F/250). This evidence supports a finding that the claimant is more than slightly limited in his ability to concentrate, persist, or maintain pace. On the other hand, he demonstrated normal psychomotor movement at other healthcare encounters (13F/17, 175, 178, 249). The claimant's thought process was

13

goal-directed and logical (4F and 10F). Further, his attention and concentration were intact (4F, 11F-12F, and 18F/10). The claimant was able to successfully perform a serial three task and simple math calculations (6F). The undersigned therefore finds that the claimant is moderately limited in this functional area. . . .

Because the claimant's mental impairment does not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria are not satisfied. . . . Finally, no State agency psychological consultant concluded that a mental listing is medically equaled.

The undersigned finds that the claimant's impairments do not meet or equal any listings.

(*Id.* at 23-25.)

It is significant that in discussing the "paragraph B" criteria, the ALJ found only moderate limitations in Claimant's ability to interact with others and ability to concentrate, persist or maintain pace because the record showed that while the Claimant has some deficiencies, the record also demonstrated that: (1) Claimant was cooperative and pleasant (4F, 6F, 10F-11F, 13F/145); (2) Claimant was able to handle his anger (3F); (3) Claimant was able to interact appropriately in a group therapy setting (18F/26); (4) Claimant showed normal psychomotor movement (13F/17, 175, 178, 249); (5) Claimant had goal-directed and logical thought processes (4F, 10F); (6) Claimant had intact attention and concentration (4F, 11F-12F, 18F/10); and Claimant could perform a serial three task and simple math calculations (6F). (*Id.* at 24.)

Turning to the ALJ's RFC assessment, the ALJ determined in pertinent part that:

[Claimant] is able to learn, understand, remember, and persist at a consistent pace while performing tasks that are simple, straightforward, and uncomplicated. The claimant is able to exercise proper judgment in performing those tasks and to respond appropriately to routine changes in the workplace. He is able to respond and behave appropriately without being distracted or distracting others when performing tasks that do not

14

require more than incidental and superficial interaction with co-workers or the public.

(*Id.* at 25.) The ALJ explained his RFC assessment for Claimant as follows:

> In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 16-3p. The undersigned also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c and 416.920c.

(*Id.*) Further, the ALJ stated:

> [T]he undersigned evaluated the extent to which the intensity, persistence, and limiting effects of the claimant's alleged symptoms are supported by objective medical evidence. After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms. However, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely supported by the medical evidence and other evidence in the record for the reasons explained next. Accordingly, these statements have been found to affect the claimant's ability to work only to the extent they can reasonably be accepted as consistent with the objective medical and other evidence. . . .
>
> Next, the objective medical evidence before the undersigned is not consistent with debilitating symptoms of bipolar disorder, ADHD, and anxiety disorder. The claimant's affect was normal, appropriate, or euthymic at many healthcare encounters after the alleged onset date (11F, 13F/179, 14F/9, 15, and 17F/3, 27, 52). He had a coherent, logical, and goal-directed thought process (11F and 17F/3, 27, 52). The claimant was calm, with appropriate or intact attention and concentration and normal psychomotor behavior (4F, 11F-12F, 13F/17, 175, 178, 249, 17F/3, 27, 52, and 18F/10). He had appropriate social judgment and insight (14F/15 and 17F/3). The claimant was pleasant and cooperative (17F/47). There is simply an absence of objective medical evidence in the record supporting the claimant's allegations of serious difficulty interacting with other people

15

or other inability to complete basic mental work activities secondary to his mental impairments.

Finally, the claimant's reports to healthcare providers were not entirely consistent with the allegations made in support of the instant application for benefits. More specifically, he reported that his medications were working (13F/33). The claimant described improved focus and concentration, with easier completion of tasks, and denied medication side effects (13F/229 and 17F). His dose was adjusted to address the claimant's reports that he noticed decreased focus as his medication wore off in the afternoon (17F). Additionally, the claimant reported improvements in his sleep and mood with medication (14F/2 and 17F). He was feeling happy and doing well, without complaints (14F and 18F/41). The claimant did not feel depressed or anxious (17F/47, 55). His depressive symptoms did not prevent him from working or getting along with other people (17F/6). Thus, the claimant's reports to healthcare providers indicate that his mental health symptoms are not as limiting as alleged.

The claimant's presentation at times with restless psychomotor behavior, poor recall, or impaired attention supports a residual functional capacity for simple work. His normal affect, behavior, memory, cognition, and attention on other occasions supports the finding that he is capable of carrying out such work. Moreover, the balance of the evidence before the undersigned supports a finding that the claimant is able to interact superficially and incidentally with co-workers and the public. His pleasant, cooperative, and calm behavior is not consistent with further social limitations. Furthermore, the claimant's ability to work for about three years on a full-time basis with similar mental health symptoms generally supports the residual functional capacity described above (hearing testimony).

(*Id.* at 28-29.) The ALJ also addressed the opinions of Dr. Tashner and Dr. Iskander:

[T]he State agency's psychological consultant at the initial level, Dr. Tashner, opined that the claimant is moderately limited in his ability to: maintain attention and concentration for extended periods, complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with

16

the general public, and get along with coworkers or peers without distracting them or exhibiting behavioral extremes (3A-4A). On reconsideration, a second State agency psychological consultant, Dr. Iskander, adopted this opinion in its entirety (7A-8A).

The undersigned finds these opinions persuasive. They are internally consistent with the cited evidence, including the claimant's annoyed mood and anxious presentation, balanced against his intact memory and concentration and reported activities of daily living (3A-4A and 7A-8A). The opinions are also consistent with the claimant's presentation with impaired (or intact) memory and concentration, a dysphoric (or euthymic) affect, and as restless (or with normal psychomotor behavior), all of which suggest moderate limitations, as discussed above. Moreover, the opinions are supported by the claimant's reports to healthcare providers regarding the relative efficacy of his prescribed treatment and performance at the Consultative Examination (6F). The consistency of the opinions with each other further lends to their persuasiveness. Thus, the undersigned finds the State agency psychological consultants' opinions persuasive.

(*Id.* at 30-31.) The ALJ concluded that:

Based on the foregoing, the undersigned finds the claimant has the above residual functional capacity assessment, which is supported by his physical and mental status examinations, the claimant's diagnostic imaging, his reports of the relative efficacy of his prescribed medications and activities of daily living, and the absence of evidence supporting further limitations.

(*Id.* at 31.)

In determining Claimant's RFC, the ALJ addressed and considered Claimant's mental health medical history and treatment for his complaints. (*Id.* at 27.) In his decision, the ALJ stated that, "[a]fter careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms" but "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely supported by the medical evidence and other evidence in the record[.]"

(*Id*. at 28.) The ALJ also found that Claimant "has the above residual functional capacity assessment, which is supported by his physical and mental status examinations, the claimant's diagnostic imaging, his reports of the relative efficacy of his prescribed medications and activities of daily living, and the absence of evidence supporting further limitations." (*Id*. at 31.) The ALJ also properly considered and discussed Claimant's subjective allegations of disability in making his overall disability determination, including determining Claimant's RFC. (*Id*. at 25-27.)

Therefore, having reviewed the entire record, I find that the ALJ properly considered Claimant's medical records, observations of treating and reviewing physicians, and Claimant's own description of his limitations in making the ALJ's RFC assessment for Claimant. *See Lacroix*, 465 F.3d at 887. Further, I find that the ALJ's decision is based on a fully and fairly developed record. *See Cox*, 495 F.3d at 618. Because the ALJ considered the medical evidence as a whole, I conclude that the ALJ made a proper RFC determination based on a fully and fairly developed record. *See Guilliams*, 393 F.3d at 803. Accordingly, I find that Claimant's assertion that the ALJ's RFC assessment is flawed is without merit.

The hypothetical the ALJ posed to the VE did "set forth impairments supported by substantial evidence in the record and accepted as true." *See Goff*, at 421 F.3d at 794. The ALJ asked the VE to:

> assume this person is able to perform light work as that term is defined in the DOT and in the regulations. This person is able to stoop, kneel, crouch, and crawl occasionally and is able to handle and finger frequently. This person is able to learn, understand, remember, and persist at a consistent pace when performing tasks that are simple, straightforward, and uncomplicated, and is able to exercise proper judgment in performing those tasks and can respond appropriately to routine changes in the workplace. And finally, this person is able to respond and behave appropriately without being distracted or distracting others when performing tasks if those tasks

> do not require more than incidental and superficial interaction with coworkers or the public.

(AR at 79.) It is clear that the ALJ's hypothetical question was based on the ALJ's RFC assessment, findings, and conclusions, which are supported by substantial evidence on the record as a whole. Therefore, I conclude that the ALJ's hypothetical question properly included only those impairments which were substantially supported by the record as a whole and captured the concrete consequences of Claimant's deficiencies. *See Goff*, 421 F.3d at 794; *Hunt,* 250 F.3d at 625. Therefore, I find that the ALJ's hypothetical question was sufficient.

Accordingly, I recommend that the District Court affirm the ALJ's decision.

## IV. CONCLUSION

For the foregoing reasons, I respectfully recommend that the District Court **AFFIRM** the decision of the ALJ.

The parties must file objections to this Report and Recommendation within fourteen (14) days of the service of a copy of this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to de novo review by the District Court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**DONE AND ENTERED** this 27th day of August, 2024.

Mark A. Roberts, United States Magistrate Judge
Northern District of Iowa